No. 25-13253

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CARA MCCLURE, ET AL.,

*Plaintiffs-Appellees*,

v.

JEFFERSON COUNTY COMMISSION,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Alabama, No. 2:23-cv-00443 (Haikala, J.)

**REPLY IN SUPPORT OF TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL
(RELIEF REQUESTED BY OCTOBER 14, 2025)**

Theodore A. Lawson, II
JEFFERSON COUNTY ATTORNEY'S OFFICE
716 Richard Arrington Jr. Blvd. North
Room 280
Birmingham, AL 35203
(205) 325-5688
lawsont@jccal.org

Michael Taunton
BALCH & BINGHAM LLP
1901 Sixth Ave. N., Suite 1500
Birmingham, AL 35203
(205) 226-3451
mtaunton@balch.com

October 6, 2025

Taylor A.R. Meehan
Rachael C.T. Wyrick
Marie E. Sayer
Soren Geiger
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
taylor@consovoymccarthy.com
rachael@consovoymccarthy.com
mari@consovoymccarthy.com
soren@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
(703) 243-9423
patrick@consovoymccarthy.com

*Counsel for Appellant*

*McClure v. Jefferson County Commission*, No. 25-13253

## CERTIFICATE OF INTERESTED PERSONS

Per Circuit Rule 26.1, Appellant certifies that the CIP contained in its initial motion and the other parties' CIPs on the docket are complete.

Dated: October 6, 2025 /s/ *Taylor A.R. Meehan*

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................. ii

Argument .............................................................................................................. 1

    I.    The Commission Is Likely to Prevail on Appeal. ............................... 1

        A.    *Alexander* is binding precedent and demands a stay. ............... 1

        B.    Plaintiffs produced no evidence of predominant racial purpose. ......... 5

    II.    The Equities and Timing Require a Stay. ............................................ 8

Conclusion ......................................................................................................... 10

Certificate of Compliance ................................................................................. 12

Certificate of Service ........................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
  585 U.S. 579 (2018) ................................................................................ 1, 3

*Alexander v. South Carolina NAACP*,
  602 U.S. 1 (2024) ..................................................................1, 2, 3, 4, 5, 6, 7

*Allen v. Milligan*,
  599 U.S. 1 (2023) .............................................................................................2

*Bethune-Hill v. Virginia State Bd. of Elections*,
  580 U.S. 178 (2017) ..................................................................................... 3, 7

*Chen v. City of Houston*,
  206 F.3d 502 (5th Cir. 2000) ..........................................................................3

*Christian Ministerial Alliance v. Jester*,
  786 F. Supp. 3d 1134 (E.D. Ark. 2025) .........................................................6

*Clark v. Putnam County*,
  293 F.3d 1261 (11th Cir. 2002) ......................................................................6

*Cooper v. Harris*,
  581 U.S. 285 (2017) ........................................................................................7

*Easley v. Cromartie*,
  532 U.S. 234 (2001) .................................................................................... 6, 8

*GBM v. Sec'y of State for State of Ala.*,
  992 F.3d 1299 (11th Cir. 2021) ......................................................................3

*Grace, Inc. v. City of Miami*,
  2023 WL 5286232 (11th Cir. Aug. 4, 2023) ...................................................3

*Grace, Inc. v. City of Miami*,
  685 F. Supp. 3d 1365 (S.D. Fla. 2023) ...........................................................2

*Jacksonville NAACP v. City of Jacksonville*,
  2022 WL 16754389 (11th Cir. Nov. 7, 2022) ................................................9

*Jacksonville NAACP v. City of Jacksonville*,
  635 F. Supp. 3d 1229 (M.D. Fla. 2022) .........................................................7

*LWV v. Fla. Sec'y of State*,
  32 F.4th 1363 (11th Cir. 2022) ......................................................................8

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) .....................................................................................8

*Miller v. Johnson*,
    515 U.S. 900 (1995) ............................................................................................7

*Pernell v. Fla. Bd. of Governors of State Univ.*,
    84 F.4th 1339 (11th Cir. 2023) .........................................................................4

*Plessy v. Ferguson*,
    163 U.S. 537 (1896) ............................................................................................8

*Robinson v. Callais*,
    144 S. Ct. 1171 (2024) ..................................................................................... 10

*Rose v. Sec'y, State of Georgia*,
    2022 WL 3572823 (11th Cir. Aug. 12, 2022).................................................9

*Shaw v. Hunt*,
    517 U.S. 899 (1996) ............................................................................................8

*Shaw v. Reno*,
    509 U.S. 630 (1993) ............................................................................................8

*Shelby Cnty. v. Holder*,
    570 U.S. 529 (2013) ............................................................................................8

*Thompson v. Dewine*,
    959 F. 3d 804 (6th Cir. 2020) ......................................................................... 10

## Statutes

52 U.S.C. §10304 ........................................................................................................7

Ala. Code §45-37-72(d) ........................................................................................... 10

In *Alexander v. South Carolina NAACP*, the Supreme Court reversed a racial gerrymandering finding for failing to "rule out core retention" and other "plausible explanation[s]" for district lines. 602 U.S. 1, 27 (2024). Here, the district court made the same error. The *only* reason given for excusing Plaintiffs from *Alexander*'s "especially stringent" burden, *id.* at 11, was Jefferson County's routine §5 compliance decades ago. Op.127 n.44. If that were enough, then South Carolina's core retention arguments should have failed in *Alexander*. They didn't. A stay is warranted. Binding Supreme Court precedent applies in Jefferson County too, no different than everywhere else.

## ARGUMENT

### I. The Commission Is Likely to Prevail on Appeal.

The district court abused its discretion by "misunderstanding … what the law requires." *Alexander*, 602 U.S. at 18; *accord Abbott v. Perez*, 585 U.S. 579, 607 (2018). The court disregarded *Alexander* and concluded past VRA compliance betrays a present-day "race-based purpose" tainting current districts. Op.127 n.44.

#### A. *Alexander* is binding precedent and demands a stay.

**1.** *Alexander* sets the ground rules for racial gerrymandering cases. The question in all such cases is whether race alone explains district lines. The "possibility" of *any* plausible non-racial explanation, including but not limited to major-party politics, "is dispositive." *Alexander*, 602 U.S. at 20; *see also id.* at 7-8 (listing non-racial explanations including "core preservation"). If something other than race predominates, then race necessarily does not.

1

*Alexander* itself refutes Plaintiffs' repeated refrain that *Alexander* applies only to "partisan gerrymandering defenses." In *Alexander*, the failure to "rule out core retention" presented "*another* serious flaw" requiring reversal. *Id.* at 26-27 (emphasis added); *see id.* at 27 (Plaintiffs must "rule out" "other redistricting factors" like "contiguity and compactness"). The same serious flaw warrants a stay here.

**2.** Plaintiffs never disputed that core retention explains the Enacted Plan. Mtn.12-15. Their newfound contention that "the 2021 plan is an outlier even among thousands of simulated plans that … prioritize core retention," McClure.Resp.17, contradicts their own expert's sworn testimony that racial demographics of Districts 1 and 2 resembled *thousands* of such plans and were *not* outliers. DE174 at 633:6-12, 641:10-23; Mtn.15. It was *Plaintiffs*' "illustrative" plans—ignoring core retention just like experts rebuked in *Alexander*—that were outliers. DE170-17 at 3-4.[1]

**3.** Rather than dispute that core retention explains the Enacted Plan, Plaintiffs convinced the district court that *Alexander* need not apply. Here again, not once do McClure Plaintiffs cite *Alexander* when trying to explain away core retention. *See* McClure.Resp.15-17. Instead, they name an inapposite §2 case preceding *Alexander* (*Allen v. Milligan*, 599 U.S. 1 (2023)), an inapposite case about remedies stayed by this Court (*Grace, Inc. v. City of Miami*, 685 F. Supp. 3d 1365 (S.D. Fla. 2023), *stay granted* 2023 WL

---

[1] The district court inexplicably ignored this uncontroverted evidence from the defense expert. DE175 803:15-20; DE170-17 at 6. Plaintiffs add to their misrepresentations by contending "the district court found" him "not credible," McClure.Resp.17, when the decision contains no credibility findings for any expert.

2

5286232 (11th Cir. Aug. 4, 2023)), and a case *rejecting* that §5 correspondence renders districts unconstitutional (*Chen v. City of Houston*, 206 F.3d 502, 518-20 (5th Cir. 2000)). Addoh-Kondi Plaintiffs would likewise have this Court disregard *Alexander* and find that commissioners intentionally ratified a past plan's racial purpose, Addoh-Kondi.Resp.15 (citing *Abbott*), but they made no record of that. Like *Abbott*, "there is no evidence" of any "aim" to adopt plans commissioners "knew were unlawful," or that they thought old "plans were invalid." 585 U.S. at 609. For decades, the Commission redistricted without any gerrymandering allegations. There was no "duty to purge" nonexistent "discriminatory intent" in some past plan. *Id.* at 606. And even if routine letters to DOJ could be so construed, those letters do not operate like "original sin" tainting present-day districts. *Id.* at 603; *Chen*, 206 F.3d at 519-21; *GBM v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1325 (11th Cir. 2021).

**4.** Nor can Plaintiffs write off other non-racial explanations for the Enacted Plan as "post-hoc-justifications," citing *Bethune-Hill* as the district court did. In *Bethune-Hill*, because there was an "express racial target" during redistricting, Virginia could not paper over that "undisputed" racial criterion with "post-hoc" ones. 580 U.S. 178, 182, 189-90, 192 (2017). But here, the district court found there were no racial targets in the 1980s, Op.14, and made no finding of racial targets used in 2021.[2]

---

[2] As for preceding decades, Plaintiffs have no evidence of a 65%-BVAP target. They cite only §5 letters reporting racial demographics *resulting* from redistricting, not any *ex ante* target. As their own experts testified, majority-minority districts can result from non-racial redistricting priorities. DE172 183:21-184:13; DE173 327:9-17.

3

The record is replete with non-racial explanations: retaining existing constituents, placing Birmingham in two districts, and winning reelection. Mtn. 13, 16-17. Such explanations, also apparent from the map itself, are not "post hoc" but rather what *Alexander* calls "alternative explanation[s]." 602 U.S. at 8; *see also* DE172 168:14-16 (Plaintiffs' expert testifying he identified alternative explanations apparent from Louisiana plan, not discussions with lawmakers). Lawmakers are not required to waive legislative privilege, *contra* Addoh-Kondi.Resp.3, to maintain the good-faith presumption that these non-racial criteria predominated, not race. *See Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339 (11th Cir. 2023).

Plaintiffs repeat the district court's error of ignoring those explanations and presuming bad faith. They say Districts 1 and 2 expanded to "track[]" the county's black population. McClure.Resp.11-13, 17; Addoh-Kondi.Resp.10, 15; *see* Op.101, 108, 113. Here was the actual and undisputed evidence at trial: The Enacted Plan kept 95% of residents in their same district. Op.54. The few precincts moved to District 1 all contained Birmingham neighborhoods (while other nearby precincts not added belonged to other municipalities). Op.62; DE175 767:4-8.[3] Birmingham has always anchored District 1. Mtn.16. Plaintiffs' own expert testified that "District 1 in the 1986 consent

---

[3] For instance, while the district court faulted adding a "Center Point" precinct to District 1, Op.123, 134, that precinct contained 70% Birmingham residents, DE170-16 at 18. *Every* proposed plan would have added that precinct to District 1—unsurprising given those Birmingham residents were former constituents of District 1's Commissioner when she served on city council. *Id.*; DE8 15:21-17:4.

decree was clearly based in Birmingham" and that "District 2 was also part of Birmingham." DE172 261:1-5; *accord* DE169-97 at 3-4. Similarly, precincts added to District 2 contained Birmingham and Bessemer neighborhoods. DE108 at 69, 75. Like Birmingham, Bessemer has always been part of District 2 and was a stronghold for that Commissioner's 2018 run-off election. DE169-97 at 4; DE174 689:18-19, 691:20-21. Remaining precincts added to District 2 were Homewood precincts—a municipality also long part of District 2. *Id.* 696:10-19; DE108 at 69. And the added Homewood residents were *majority white*. Having written off *Alexander* as inapplicable, neither Plaintiffs nor the district court stopped to ask whether differences in racial demographics across districts were simply a "side effect" of these permissible non-racial explanations. *Alexander*, 602 U.S. at 20.

### B. Plaintiffs produced no evidence of predominant racial purpose.

**1.** As for the 2021 redistricting, there is no evidence that race was discussed, let alone predominated, before the Enacted Plan's adoption. Plaintiffs respond with one reference to race by one Commissioner (not two, *contra* McClure.Resp.2, 9) made *after* the vote (note before, *contra id.* at 2) about a few areas in District 2 alone. That is not evidence of predominant racial purpose. *See* Mtn.19-20. District 2's BVAP *declined* overall. The largest precinct added to District 2 was over 85% white. DE170-16 at 24, 27, figures 9 & 11. A single post-vote remark indicating one commissioner's *awareness* of race is far less than the "modicum" of evidence still insufficient in *Cromartie*, where the mapdrawer admitted to moving the sizable "Greensboro Black community into the

5

12th" district to satisfy "a need for racial and partisan balance." 532 U.S. 234, 253-54, 257 (2001). And it pales in comparison to *Clark v. Putnam County*, where §5 correspondence said that "black voting strength" was "maximized" by including "every contiguous census block which would have the effect of increasing the black percentage in the two majority black voting districts." 293 F.3d 1261, 1268 (11th Cir. 2002).[4]

Nor is there any evidence that the Enacted Plan "split municipalities across districts predominately along racial lines." *Contra* McClure.Resp.11, 13. Plaintiffs, like the district court, cite *nothing* for this assertion. *See* Op.118.[5] Because there is nothing to cite. Many so-called "splits" do not exist. Mtn.18 n.7; DE183 at 114-15. As for actual splits, experts agreed racial demographics varied on either side of splits, and that unwieldy municipal lines resulting from municipal annexations forced splits. *E.g.*, DE172 110:21-111:8, 177:10-23. Most fundamentally, the Constitution prohibits race-based districting, not municipal splits. *Alexander*, 602 U.S. at 7.

**2.** As for past decades, descriptions of racial demographics in §5 letters is hardly surprising given §5's requirement not to change election laws in ways that abridge or diminish minority voting rights, 52 U.S.C. §10304, and is not evidence of gerrymandering then or now. Plaintiffs' contrary arguments would redefine *Alexander*'s "racial-

---

[4] *Contra* McClure.Resp.9, Plaintiffs forget incumbent commissioners would be well aware of the politics of their constituents. *See* DE170-8 33:1-3, 39:22-40:8 (Democratic commissioners speaking about Democratic areas). *See also Alexander*, 602 U.S. at 22, 37; *Christian Ministerial Alliance v. Jester*, 786 F. Supp. 3d 1134, 1147-48 (E.D. Ark. 2025).

[5] Plaintiffs similarly contend they offered maps that would "produce the same partisan makeup," McClure.Resp.10, citing no evidence.

6

predominance test," 602 U.S. at 19, into a racial-predominance presumption for all jurisdictions previously under preclearance.

Plaintiffs omit the district court found there were *no* racial targets when districts were created by consent decree in 1985. *Compare* Op.14 (no "explicit racial targets"), *with Cooper v. Harris*, 581 U.S. 285, 300 (2017) ("announced racial target"), *Miller v. Johnson*, 515 U.S. 900, 919 (1995) (enacting "ACLU's 'max-black' plan"), *Bethune-Hill*, 580 U.S. at 192 ("express racial target").[6] As for the county's four §5 letters over the span of three decades, ending in 2013, they said only that redistricting did not "significantly chang[e]" racial demographics. McClure.Resp.3.[7] That routine §5 correspondence is not evidence of racial predominance then or now. Mtn.7-11. The districts on trial were redrawn in 2021 without reference to the VRA. DE170-5. And Plaintiffs have no answer to *Alexander*'s silence regarding South Carolina's past VRA compliance. *See* Mtn.12. What was "dispositive" in *Alexander* was the "possibility" of non-racial explanations for districts in 2021, 602 U.S. at 20, not South Carolina's similar "history" of VRA compliance that led the district court to relegate *Alexander* to a footnote. Op. 127 n.44. There is no condoning the theory that a jurisdiction's routine §5 compliance of

---

[6] This record bears no resemblance to that in *Jacksonville NAACP v. City of Jacksonville*, replete with lawmakers' statements of race-based intent for the *challenged* plan. 635 F. Supp. 3d 1229, 1257, 1259 (M.D. Fla. 2022).

[7] If the particular language—that redistricting equalized population "without significantly changing the ratio of black and white population within the districts"—were evidence of predominance, Op.99, 102-03, then saying "I drove to Walmart without hitting pedestrians" is evidence of attempted manslaughter.

the past taints districts today. The Supreme Court has never gone so far. *Shelby Cnty. v. Holder*, 570 U.S. 529, 5757 (2013) ("We issue no holding on §5 itself ….").

## II. The Equities and Timing Require a Stay.

**A.** Plaintiffs contend that the Commission "is not harmed by complying with the Constitution." McClure.Resp.1. Ordinarily, yes. But the idea of constitutional compliance in the decision below is anything but "color-blind." *Cf. Plessy v. Ferguson*, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting). That decision faults the Commission for not injecting race *enough* in 2021. *E.g.*, Op.20, 27, 30-32, 98, 100, 101, 107, 119, 123-29, 138 n.50 (criticizing, *inter alia*, lack of "racially polarized voting" analyses and movement of Black Birmingham precincts instead of white non-Birmingham precincts); *see also* McClure.Resp.3, 11-12. Apparently, the only way to avoid racial gerrymandering was to think *more* about race to reduce the Black population in Districts 1 and 2. But there is no such "affirmative obligation." *Cromartie*, 532 U.S. at 249. Even when for allegedly "remedial" purposes, *Shaw v. Hunt*, 517 U.S. 899, 905 (1996), such racial rebalancing is by its nature "odious," *Shaw v. Reno*, 509 U.S. 630, 643 (1993).

**B.** While the merits and balance of harms warrant a stay, *Purcell* provides an independent reason to let the 2021 district lines govern for the 2026 elections. *See, e.g.*, *LWV v. Fla. Sec'y of State*, 32 F.4th 1363, 1372 (11th Cir. 2022) (stay independently warranted under either *Purcell* or traditional *Nken* factors); *see Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (explaining stay warranted under *Purcell*). Plaintiffs do not dispute that they "delayed" their suit, *Merrill*, 142 S. Ct. at 881

8

(Kavanaugh, J., concurring), nor the reality of the November 2025 residency requirement. These are not mere "inconveniences," *contra* McClure.Resp.21, for prospective candidates must know "who will be running against whom" and where, *id.* at 880. Nor is it a hypothetical concern. The most-discussed "illustrative" plan pairs incumbents. Op.53-55. And, of course, candidates cannot simply move overnight.

Plaintiffs' remaining arguments misrepresent past filings to argue *Purcell* ought not apply. November did not go "unmentioned" and is no "new deadline." *Contra* McClure.Resp.22-23. Seven months ago, the Commission's post-trial brief, citing *Purcell*, warned that "Candidates must live in their districts for at least one year beginning on November 3, 2025." DE183 at 233. The Stephenson declaration is not to the contrary. His declaration described the 2021 redistricting timing, culminating with new districts by November 2021 in advance of May 2022 primary elections. DE31 ¶18. And he averred the county would need to know "this month"—which was August—if districts were changing in response to Plaintiffs' failed preliminary injunction motion. *Id.* ¶50. That distinguishes this case from *Rose*, where the defendant agreed not to "make an appeal based on *Purcell*," 2022 WL 3572823, at *5-6 (11th Cir. Aug. 12, 2022) (Rosenbaum, J., dissenting), and *Jacksonville*, where the defendant "managed to pass an interim remedial plan," deflating *Purcell* concerns, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022). Here, the only "agreed-upon schedule," McClure.Resp.5, was that district lines could not change after candidates were required to move to their prospective districts in early November, DE183 at 233 (citing Ala. Code §45-37-72(d)).

9

This case is not beyond *Purcell*'s "outer bounds." *Contra* McClure.Resp.20. While Plaintiffs contend that outer boundary is "four months," *id.*, Plaintiffs' same counsel secured a stay six months before primary elections in *Robinson v. Callais*, 144 S. Ct. 1171 (2024). And while Plaintiffs say "no court has *ever* found *Purcell* to warrant a stay when an election is over a year away," McClure.Resp.20, the next election is in May, with the first deadline weeks away. *See Thompson v. Dewine*, 959 F. 3d 804, 813 (6th Cir. 2020) (explaining a stay is warranted when an injunction comes too close to "interim deadlines" even if the election is "months away").

Finally, assurances that a remedial plan can be litigated "through an orderly process" by October 20 ring hollow. *Contra* McClure.Resp.1, 19, 22. Plaintiffs' same counsel represented (correctly) in *Robinson* that remedial proceedings "have taken months." Emergency App. at 8, No. 23A994 (U.S.). Here, district lines "took roughly 90 days to approve" in 2021 "even making minimal changes." DE31 ¶48. The Commission waited 7 months after trial, 14 months after summary judgment motions, and 46 months after redistricting for the district court's decision; condensing remaining remedial proceedings into a few weeks' time is in no way "orderly."

## CONCLUSION

This Court should grant a stay pending appeal.

10

Dated:   October 6, 2025

Theodore A. Lawson, II
JEFFERSON COUNTY ATTORNEY'S OFFICE
716 Richard Arrington Jr. Blvd. North
Room 280
Birmingham, AL 35203
(205) 325-5688
lawsont@jccal.org

Michael Taunton
BALCH & BINGHAM LLP
1901 Sixth Ave. N., Suite 1500
Birmingham, AL 35203
(205) 226-3451
mtaunton@balch.com

Respectfully submitted,

/s/ *Taylor A.R. Meehan*
Taylor A.R. Meehan
Rachael C. T. Wyrick
Marie E. Sayer
Soren Geiger
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
taylor@consovoymccarthy.com
rachael@consovoymccarthy.com
mari@consovoymccarthy.com
soren@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

*Counsel for Defendant*

11

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 27(d)(2)(A) because it contains 2,595 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: October 6, 2025                                         */s/ Taylor A.R. Meehan*

## CERTIFICATE OF SERVICE

I filed this brief on the Court's electronic filing system, which will email everyone requiring notice.

Dated: October 6, 2025                                         */s/ Taylor A.R. Meehan*