# In the
# United States Court of Appeals
## For the Eleventh Circuit

No. 25-13253

CARA MCCLURE,
GREATER BIRMINGHAM MINISTRIES,
METRO-BIRMINGHAM BRANCH OF THE NAACP, THE,
ALABAMA STATE CONFERENCE OF THE NAACP,

                                                *Plaintiffs-Appellees,*

*versus*

JEFFERSON COUNTY COMMISSION,

                                                *Defendant-Appellant,*

COMMISSION PRESIDENT DISTRICT 3, et al.,

                                                *Defendants.*

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:23-cv-00443-MHH

No. 25-13254

ALEXIA ADDOH KONDI,
CYNTHIA BONNER,
JA'NELLE BROWN,
ERIC HALL,
MICHAEL HANSEN, et al.,

*Plaintiffs-Appellees,*

versus

JEFFERSON COUNTY COMMISSION, THE,
 a political subdivision of the State of Alabama,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:23-cv-00503-MHH

Before JORDAN, BRANCH, and LUCK, Circuit Judges.

BY THE COURT:

In April 2023, the plaintiffs in this case sued Alabama's Jefferson County Commission (the "Commission") to challenge the electoral map the Commission enacted in November 2021 (the "2021 plan"). On September 16, 2025, following a bench trial, the district court permanently enjoined the Commission from using the 2021 plan because it determined that the districts in the 2021

plan were racially gerrymandered. The district court then set a schedule for briefing and a hearing to develop a remedial redistricting plan. The post-briefing hearing is scheduled for October 20, 2025, which is only two weeks before the deadline for candidates to establish residency in the district they seek to represent in the next election. No electoral map is currently in place and the district court has not provided a date by which a remedial redistricting plan will be approved. The Commission therefore seeks a stay of the injunction pending appeal. The "*Purcell* principle"[1] instructs that "federal district courts ordinarily should not enjoin state election laws in the period close to an election." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022) (quotation omitted). Applying *Purcell* and its related case law, we grant the Commission's motion for a stay pending appeal.[2]

The Supreme Court in *Purcell* required courts to "weigh . . . considerations specific to election cases and [their] own institutional procedures" when reviewing an injunction issued close to an election. *Purcell*, 549 U.S. at 4. Since *Purcell*, "[t]he Supreme Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020) (quotations omitted). Because running an election

---

[1] *Purcell v. Gonzalez*, 549 U.S. 1 (2006).

[2] The district court did not apply *Purcell* and instead evaluated this case using the traditional stay factors.

"is a complicated endeavor," it is important that "the rules of the road [are] clear and settled." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (mem.) (Kavanaugh, J., concurring in denial of application to vacate stay). When a district court issues an injunction that violates the *Purcell* principle, "our precedents indicate that this Court, as appropriate, should correct that error." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 425 (2020) (per curiam). To correct such errors, we "should stay the injunction, often . . . while expressing no opinion on the merits." *League of Women Voters*, 32 F.4th at 1371 (alterations adopted) (quotations and citation omitted).

"[T]he Supreme Court has never specified precisely" when an injunction's proximity to an election violates the *Purcell* principle. *League of Women Voters*, 32 F.4th at 1371. But it is instructive that the Supreme Court in *Merrill* granted a stay when a primary election was still "about four months" away. *Merrill v. Milligan*, 142 S. Ct. 879, 888 (2022) (mem.) (Kagan, J., dissenting); *see also Thompson v. Dewine*, 959 F.3d 804, 813 (6th Cir. 2020) (applying *Purcell* and granting a stay when the election was more than five months away but significant interim deadlines were imminent).

When determining how far the *Purcell* principle extends, courts do not simply look to the next primary or general election date—there are often critical deadlines that arise before election day itself. *See, e.g.*, *League of Women Voters*, 32 F.4th at 1371 (considering pre-election activities like voter registration and the

need to re-train poll workers); *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 898 (6th Cir. 2024) (applying *Purcell* based on a voter registration deadline); *Thompson*, 959 F.3d at 813 (applying *Purcell* because of "important interim deadlines" like a deadline to procure signatures). Those pre-election deadlines are particularly significant in redistricting cases which affect residency requirements, change constituencies, and require election administrators to adapt to a remedial plan. *See Robinson v. Callais*, 144 S. Ct. 1171, 1172 (2024) (mem.) (Jackson, J., dissenting) ("Redistricting raises unique and unusual timeliness concerns, with important deadlines weeks and even months before an election.").

After considering these pre-election deadlines, it is clear that the *Purcell* principle applies in this case.[3] Jefferson County's primary election is in May 2026, but several important deadlines are even earlier. Ballots must be printed in March 2026, candidate names must be certified by February 2026, and—most immediately—candidates must reside in the district they seek to represent by November 3, 2025—one year before the November 3, 2026 general election. *See* Ala. Code § 45-37-72(d).

So the first "important[] interim deadline[]"—the candidate residency deadline—is less than three weeks away. *Thompson*, 959

---

[3] The dissent argues that the pre-election deadlines do not require us to apply *Purcell*. The dissent's only authority for that position is an unpublished opinion. While we note that the Supreme Court has not provided definitive guidance on this issue, this Court and the Sixth Circuit, in published opinions, have focused on pre-election deadlines in their decision to apply *Purcell*. *See, e.g.*, *League of Women Voters*, 32 F.4th at 1371; *Thompson*, 959 F.3d at 813.

F.3d at 813. With that deadline looming and the district court's recently-issued injunction in place, "individuals and entities now do not know who will be running against whom in the primaries," "potential candidates do not even know which district they live in," "[n]or do incumbents know if they now might be running against other incumbents . . . ." *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring in grant of applications for stays). That scenario is the exact "chaos and confusion" the *Purcell* principle is meant to protect against. *Id*. So "[w]hatever *Purcell*'s outer bounds" are, this case is within them. *League of Women Voters*, 32 F.4th at 1371.

Although *Purcell* applies, our analysis does not end there. *Purcell* "is not 'absolute.'" *Id*. at 1372 (quoting *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays)). *Purcell* does, however, "'heighten[]' the standard that a plaintiff must meet to obtain injunctive relief." *Id*. (quoting *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays)). To "overcome" the *Purcell* principle, the plaintiffs must

> establish[] at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.

*Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays); *see also Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 229 (4th Cir. 2024) (applying Justice Kavanaugh's test).

The plaintiffs cannot satisfy prongs three and four of this test, so we need not address prongs one and two. *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays) (describing the plaintiffs' burden to "establish[] at least" the four prongs to overcome the *Purcell* principle). Beginning with prong three, the plaintiffs have unduly delayed bringing their complaint. The Commission adopted the 2021 plan in November 2021, and the plaintiffs then waited more than 17 months to bring these suits. The plaintiffs' delay, on its own, is sufficient to warrant a stay.[4] *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays); *Benisek v. Lamone*, 585 U.S. 155, 160 (2018) (affirming denial of a preliminary injunction because of plaintiffs "years-long delay" in seeking injunctive relief from redistricting); *cf. Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming denial of preliminary injunction after five-month delay because "[a] delay in seeking a preliminary injunction of even only a few months . . . militates against a finding of irreparable harm").

The plaintiffs also fail at prong four. The risk of confusion and hardship to all stakeholders should be considered in a *Purcell*

---

[4] While it does not factor into our analysis, we note that the district court did not enjoin the 2021 plan until eight months after trial, 14 months after summary judgment motions, and 29 months after the complaints were filed.

analysis. *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays) ("Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others."); *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring in denial of application to vacate stay) ("[The *Purcell* principle] not only prevents voter confusion but also prevents election administrator confusion . . . .").

The district court's injunction, given its timing, will create confusion and hardship for candidates, election administrators, and others because there is no electoral map in place mere weeks before the impending November 3 residency deadline. The district court's scheduling order calls for a potential hearing on October 20, with any remedial redistricting plan to follow at an undetermined date.[5] That schedule leaves, at most, two weeks until the November 3 residency deadline. Given the current posture, compliance with this deadline is nearly impossible.

And even once a remedial redistricting plan is in place, "election administrators must first understand the court's injunction, then devise plans to implement that late-breaking injunction." *Id*. In this case, the Commission will need time to conform any remedial redistricting plan from being drawn along the Census Bureau voter tabulation districts that the plaintiffs have used in this litigation to the slightly different county precinct lines,

---

[5] The district court also left open the possibility that it may appoint a special master down the road, yet another potential for delay.

which are how the Commission administers elections. The Commission will need to invest the resources to complete those revisions to any remedial redistricting plan at warp speed.

Even in the unlikely scenario that a remedial redistricting plan could be in place before November 3, the candidates would face confusion and hardship with little time to react to any remedial redistricting plan the district court orders. And until a remedial redistricting plan is adopted, candidates are left guessing at what district they reside in and therefore what district they will be running to represent in the next election. *See* Ala. Code § 45-37-72(d). With no current electoral map, incumbent commissioners do not know whether the forthcoming remedial redistricting plan will place their current residence in the same district as another incumbent commissioner, as one proposed redistricting plan admitted at trial did. When confronted by a possible face-off between incumbents or a shifting pool of constituents, candidates may need to decide between moving or entirely reworking their political strategy. So the absence of any electoral map this close to November 3 will cause election administrators and candidates "significant cost, confusion, or hardship." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays); *see Robinson*, 144 S. Ct. at 1171 (granting a stay more than five months before an election while remedial proceedings were ongoing and no electoral map was in place).

The plaintiffs offer no rebuttal to these conclusions on prongs three and four: they do not attempt to justify their 17-

month delay in bringing this case, nor do they refute the hardship and confusion that the district court's injunction will cause so close to the candidate residency deadline.

Instead, the plaintiffs argue that *Purcell* does not apply, first because the next election is too distant. But the plaintiffs (and the district court) incorrectly focus on the date of the next general election instead of the primary election and the approaching election-related deadlines. As we explained above, however, the next general election date is not the only date relevant to determining whether *Purcell* applies. *See, e.g.*, *Merrill*, 142 S. Ct. at 879 (Kavanaugh, J., concurring in grant of applications for stays) (measuring the time until "the primary elections begin"). Also relevant are the deadlines for actions which will be affected by the remedial plan. *See, e.g.*, *Tenn. Conf.*, 105 F.4th at 898 (looking to the voter registration deadline in a challenge to voter registration requirements). Here, the earliest deadline affected by a redistricting plan is November 3, 2025, the date by which candidates must reside in their respective districts.

Second, the plaintiffs argue that the Commission cannot rely on the *Purcell* principle because it should not be allowed to back away from its representation that it only needed one month before a candidate qualifying deadline to administer the 2024 election. The plaintiffs claim that the Commission's recent statements about needing more time to administer the 2026 election are an "eleventh-hour self-serving timeline" that precludes a *Purcell* argument. The plaintiffs point to *Rose v. Raffensperger*, 143 S. Ct. 58

(2022) (mem.) as authority for their argument that *Purcell* does not apply when defendants, in attempting to obtain a stay, contradict their prior representations about how much time they need to administer an election. But the Commission has consistently represented, both for the 2024 and 2026 elections, that the district court had not provided it sufficient time to administer a reliable election.[6]

Accordingly, *Rose* is inapposite. In *Rose*, the Supreme Court vacated this Court's grant of a stay because the Secretary of State "represent[ed] to the district court that [it would not make an appeal based on *Purcell* because] the schedule on which the district court proceeded was sufficient to enable effectual relief as to the November elections." *Rose*, 143 S. Ct. at 59. Unlike in *Rose*, where the Secretary of State explicitly disclaimed any *Purcell* challenge but later changed its position, the Commission has made a *Purcell* objection every step of the way.

Finally, the plaintiffs argue that granting a stay would undermine public confidence and lead to voter confusion by

---

[6] Further, the Commission's statements are not contradictory. The supposed "contradict[ory]" earlier statements were about the 2024 election (in the context of the plaintiffs' motion for a preliminary injunction). Even assuming the plaintiffs can extrapolate from the Commission's statements about the 2024 election (which had different rules and deadlines than the 2026 election), the plaintiffs cherry pick one statement about "the most conservative estimate" of how much time the Commission needed to administer a reliable election and ignore its statement that even that timeline was likely "insufficient."

requiring voters to cast ballots in districts a federal court declared unconstitutional. But the plaintiffs vastly overstate the voter confusion that will result from a stay maintaining the status quo using the 2021 plan that has governed the last three general elections and with which voters are familiar. And they understate the diminished public confidence resulting from a last minute remedial redistricting announcement.

Ultimately, none of the plaintiffs' arguments show that they did not "unduly delay[] bringing [their] complaint to court" and that any remedial redistricting plan will not cause "significant cost, confusion, or hardship" if it is used in the next election. *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of applications for stays).

For the above reasons, the plaintiffs cannot meet the heightened standard the *Purcell* principle requires to obtain injunctive relief.[7] Accordingly, while we "express[] no opinion on the merits" of the plaintiffs' claims, *League of Women Voters*, 32 F.4th at 1371 (quotation omitted), the "*Purcell* principle requires that we

---

[7] For the same reasons we explained above—delay and the public interest—the equitable factors weigh in favor of granting a stay under *Nken v. Holder*, 556 U.S. 418 (2009). And the Commission has made a "substantial case on the merits," *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986), that the district court did not "rule out" other "plausible explanation[s]" or "possibilit[ies]" for the 2021 Plan (including anchoring two districts in Birmingham and political considerations), as required to overcome the presumption that the Commission acted in good faith, *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 20, 27 (2024).

stay" the district court's order.  *See Merrill*, 142 S. Ct. at 882 (Kavanaugh, J., concurring in grant of applications for stays).  Thus, we grant the Commission's motion to stay the district court's injunction pending appeal.

**GRANTED.**

Jordan, Circuit Judge, Dissenting:

With respect, I dissent. In my view, the district court did not commit any reversible error—legal or factual—when it concluded that the 2021 plan violated the Equal Protection Clause of the Fourteenth Amendment and enjoined the Jefferson County Commission from using that plan in its elections. Nor is a stay warranted under *Purcell v. Gonzalez*, 549 U.S. 1 (2006).

The standards of review that apply here are deferential. First, we "review the scope of [a permanent] injunction under the abuse-of-discretion standard." *U.S. Commodity Future Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018). And that standard gives the district court a "wide range of choice." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 217 (2025) (cleaned up). To obtain a stay, the appellants must show, among other things, a substantial likelihood of success on their claim that the district court abused its discretion. *See Robinson v. Attorney General*, 957 F.3d 1171, 1177 (11th Cir. 2020). Second, we "review a district court's finding as to racial predominance only for clear error, except when the court made a legal mistake." *Cooper v. Harris*, 581 U.S. 285, 309 (2017). There is no legal error here, and as a result "we may not reverse just because we 'would have decided the [matter] differently.' A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Id.* at 293 (citation omitted).

In my view, it does not appear that the district court clearly erred in finding that race predominated the 2021 plan. Nor am I

convinced that the traditional four-part test to stay an injunction pending appeal favors the appellants. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)). The district court's order is thorough and, viewed through the required lens of deferential review, does not indicate that there was an abuse of discretion.

I turn, then, to *Purcell*. The majority concludes that *Purcell* requires a stay of the district court's injunction. Not so. The district court enjoined the Commission on September 16, 2025, and Jefferson County's primary election is scheduled to occur on May 19, 2026. Given that eight-month span, we are not yet on the eve of an election such that *Purcell* applies. *See League of Women Voters of Fla., Inc.*, 32 F.4th at 1371 (granting stay pending appeal under *Purcell* where, at the time the district court issued its injunction, "voting in the next statewide election was set to begin in *less* than four months (and local elections were ongoing)"). *See also Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022) (denying motion to stay and declining to apply *Purcell* where "the district court issued its injunction three months prior to the candidate qualifying period and five months prior to the elections for a single county"). As far as I can tell, no circuit court has applied *Purcell* to an election eight months away, and we should not be the first.

True, there are pre-election deadlines. As the majority notes, for example, ballots must be printed in March of 2026. But

even that deadline comes six months after the issuance of the injunction. The most pressing deadline seems to be the requirement that all candidates reside in the district they seek to represent by November 3, 2025. This is not dispositive, however, and does not negate the long length of time before the upcoming elections. *See, e.g., Jacksonville Branch of NAACP*, 2022 WL 16754389, at *4 (denying motion for a stay despite certain inconveniences that may have resulted from an injunction, including that "voters and candidates potentially [would have] to readjust to new districts").

There is no binding precedent applying *Purcell* in the circumstances before us. Given that the abuse of discretion standard gave the district court a wide range of choice, its view of *Purcell*, *see* D.E. 205 at 6–7, does not constitute a "clear error of judgment." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

I would deny the motion for a stay, and respectfully dissent.