**No. 25-13253-J**
(*consolidated with* **No. 25-13254-J)**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

CARA MCCLURE, ET AL,

*Plaintiffs-Appellees*,

v.

JEFFERSON COUNTY COMMISSION

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Alabama, No. 2:23-cv-00443 (Haikala, J.)

**MCCLURE APPELLEES' SUPPLEMENTAL BRIEF**

Kathryn Sadasivan
Brenda Wright
Lauren Carbajal
NAACP Legal Defense and
Educational Fund, Inc
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
ksadasivan@naacpldf.org
bwright@naacpldf.org
lcarbajal@naacpldf.org

Deuel Ross
Kacey Mordecai
NAACP Legal Defense and
Educational Fund, Inc
700 14th Street N.W., Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
dross@naacpldf.org
kmordecai@naacpldf.org

August 4, 2026

*Counsel for Appellees*

Ruth Greenwood
Election Law Clinic
Harvard Law School
6 Everett Street, Suite 4105
Cambridge, MA 02138
Tel: (917) 403-4976
rgreenwood@law.harvard.edu

Nicki Lawsen
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
Fax: (205) 254-1500
nlawsen@wigginchilds.com

*Additional Counsel for Appellees*

ii

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, the undersigned counsel certifies that the following persons and parties may have an interest in the outcome of this appeal:

1. Addoh-Kondi, Alexia, *Addoh-Kondi Plaintiff-Appellee*

2. Alabama State Conference of the NAACP, *McClure Plaintiff-Appellee*

3. Becker, David, *Amicus curiae*

4. Bernstein, C'Zar, *Former counsel for Defendant-Appellant*

5. Blacksher, James, *Counsel for Addoh-Kondi Plaintiffs-Appellees*

6. Bonner, Cynthia, *Addoh-Kondi Plaintiff-Appellee*

7. Brown, Ja'Nelle, *Addoh-Kondi Plaintiff-Appellee*

8. Carbajal, Lauren, *Counsel for McClure Plaintiffs-Appellees*

9. Carter, Brittany, *Counsel for McClure Plaintiffs-Appellees*

10. Carroll, Donald, *Counsel for Defendant-Appellant*

11. Clemon, U.W., *Counsel for Addoh-Kondi Plaintiffs-Appellees*

12. Davis, Samuel, *Former counsel for McClure Plaintiffs-Appellees*

13. Fernandes, Julie, *Amicus curiae*

14. Friel, Gregory, *Amicus curiae*

15. Gaber, Mark, *counsel for Amici Curiae*

16. Geiger, Soren, *Counsel for Defendant-Appellant*

17. Greater Birmingham Ministries, *McClure Plaintiff-Appellee*

18. Greenwood, Ruth, *Counsel for McClure Plaintiffs-Appellees*

19. Grisafi, Lily, *Former counsel for McClure Plaintiffs-Appellees*

20. Gross, Mark, *Amicus curiae*

21. Haikala, Madeline, *United States District Judge (N.D. Ala.)*

22. Hall, Eric, *Addoh-Kondi Plaintiff-Appellee*

23. Hansen, Michael, *Addoh-Kondi Plaintiff-Appellee*

24. Harless, Annabelle, *Counsel for amici curiae*

25. Heffernan, Brian, *Amicus curiae*

26. Hessel, Daniel, *Counsel for McClure Plaintiffs-Appellees*

27. Juarez, Julia, *Addoh-Kondi Plaintiff-Appellee*

28. Lane, Kathleen, *Former counsel for Defendant-Appellant*

29. Lawsen, Nicki, *Counsel for McClure Plaintiffs-Appellees*

30. Lawson, II, Theodore, *Counsel for Defendant-Appellant*

31. Levitt, Justin, *Amicus curiae*

32. Long, Charles, *Addoh-Kondi Plaintiff-Appellee*

33. McClure, Cara, *McClure Plaintiff-Appellee*

34. McCrary, Peyton, *Amicus curiae*

35. Meehan, Taylor, *Counsel for Defendant-Appellant*

36. Metro-Birmingham Branch of the NAACP, *McClure Plaintiff-Appellee*

37. Moore, Toby, *Amicus curiae*

38. Mordecai, Kacey-Ann, *Counsel for McClure Plaintiffs-Appellees*

39. Mulroy, Steven, *Amicus curiae*

40. Muhammad, William, *Addoh-Kondi Plaintiff-Appellee*

41. Pershing, Stephen B., *Amicus curiae*

42. Powers, John, *Amicus curiae*

43. Randall, Fred, *Addoh-Kondi Plaintiff-Appellee*

44. Remlinger, Brian, *Amicus curiae*

45. Rice, Richard, *Counsel for Addoh-Kondi Plaintiffs-Appellees*

46. Rich, Joseph, *Amicus curiae*

47. Ritter, Richard, *Amicus curiae*

48. Ross, Deuel, *Counsel for McClure Plaintiffs-Appellees*

49. Rouco, Richard, *Counsel for Addoh-Kondi Plaintiffs-Appellees*

50. Rush, Bob, *Amicus curiae*

51. Sadasivan, Kathryn, *Counsel for McClure Plaintiffs-Appellees*

52. Sayer, Marie, *Counsel for Defendant-Appellant*

53. Sells, Bryan, *Amicus curiae*

54. Sheikh, Uruj, *Former counsel for McClure Plaintiffs-Appellees*

55. Smith, Tammie, *Addoh-Kondi Plaintiff-Appellee*

56. Strawbridge, Patrick, *Counsel for Defendant-Appellant*

57. Taunton, Michael, *Counsel for Defendant-Appellant*

58. Venkatraman, Nithin, *Counsel for amici curiae*

59. Walker, Dorman, *Former counsel for Defendant-Appellant*

60. Walker, Robert, *Addoh-Kondi Plaintiff-Appellee*

61. Wright, Brenda, *Counsel for McClure Plaintiffs-Appellees*

62. Wyrick, Rachael, *Counsel for Defendant-Appellant*

Plaintiffs-Appellees further state that no publicly traded company or

corporation has an interest in the outcome of the case or appeal.

/s/*Kathryn C. Sadasivan*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................................................iii

TABLE OF AUTHORITIES..............................................................................viii

I.      The Commission and Its Agents, Employees, and Persons Acting in Concert with it, Use and Can Be Prevented from Using the 2021 Plan in Their Statutorily Prescribed Election Responsibilities. ......................................................2

II.     The Commission Cannot Be Ordered to Legislate, But it Can Be Ordered to Implement a Remedial Plan Without Adding Any Other Defendants. ................7

III.    This Case Should Proceed Among the Existing Parties But, if the Court Believes Otherwise, the Federal Rules Require this Court to Remand to the District Court to Permit the Joinder of Any Necessary Defendant. .....................8

CONCLUSION ................................................................................................10

CERTIFICATE OF COMPLIANCE..............................................................12

CERTIFICATE OF SERVICE........................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dillard v. Baldwin Cnty. Comm'n*,
    694 F. Supp. 836 (M.D. Ala.), *aff'd* 862 F.2d 878 (11th Cir. 1988) ..............................1

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003)........................................................................9

*FTC v. Leshin*,
    618 F. 3d 1221 (11th Cir. 2010)...................................................................5, 6

*Garner v. Jefferson Cnty. ex rel. Whisler*,
    175 So. 352 (Ala. 1937) ...............................................................................1

*Goldsmith v. City of Atmore*,
    996 F.2d 1155 (11th Cir. 1993)......................................................................3

*Grayson v. Madison Cnty.*,
    No. 84-v-5770, 1988 U.S. Dist. LEXIS 19684 (N.D. Ala. June 2.
    1988) (Vance, R., J.)...................................................................................1

*Hale Cnty. v. United States*,
    496 F. Supp. 1206 (D.D.C. 1980) ..................................................................1

*I.L. v. Alabama*,
    739 F.3d 1273 (11th Cir. 2014).....................................................................2

*Jacobson v. Florida Secretary of State*,
    974 F.3d 1236 (11th Cir. 2020).....................................................................7

*Jones v. Jefferson Cnty. Bd. of Educ.*,
    No. 19-CV-01821, 2019 WL 7500528 (N.D. Ala. Dec. 16, 2019)..............................6

*Made in the USA Found. v. United States*,
    242 F.3d 1300 (11th Cir. 2001)......................................................................2

*Miller v. Johnson*,
    515 U.S. 900 (1995) ..................................................................................10

*Molinos Valle Del Cibao, C. por A. v. Lama,*
633 F.3d 1330 (11th Cir. 2011)......................................................................9

*North Carolina v. Covington,*
585 U.S. 969 (2018) .........................................................................................7

*People First of Ala. v. Merrill,*
467 F. Supp. 3d 1179 (N.D. Ala. 2020)........................................................6

*Riley v. Kennedy,*
553 U.S. 406 (2008) .........................................................................................1

*Santiago v. Honewell Int'l, Inc.,*
768 Fed. Appx. 1000 (11th Cir. 2019)..........................................................9

*Scott v. Taylor,*
405 F.3d 1251 (11th Cir. 2005)......................................................................6

*Spallone v. United States,*
493 U.S. 265 (1990) .........................................................................................7

*State v. Jefferson Cnty. Comm'n,*
139 So. 243 (Ala. 1931) ..................................................................................1

*In re Torcise,*
116 F.3d 860 (11th Cir. 1997).........................................................................9

*United States v. Hall,*
472 F.2d 261 (5th Cir. 1972)...........................................................................6

*United States v. Swift & Co.,*
286 U.S. 106 (1932) .........................................................................................8

*Utah v. Evans,*
536 U.S. 452 (2002) .........................................................................................2

*Wilding v. DNC Servs. Corp.,*
941 F.3d 1116 (11th Cir. 2019).......................................................................2

**Statutes**

Ala. Code § 11-3-1.1......................................................................................5, 8

Ala. Code § 11-3-1.1(a) ....................................................................................7

Ala. Code § 11-3-1.1(e) ..........................................................................8

Ala. Code § 17-3-10..............................................................................3

Ala. Code § 17-3-60..............................................................................4

Ala. Code § 17-4-2................................................................................4

Ala. Code § 17-6-2.......................................................................... 2, 3, 5

Ala. Code § 17-6-2(c)............................................................................5

Ala. Code § 17-6-4.............................................................................2, 5

Ala. Code § 17-6-4(a) ..........................................................................3, 5

Ala. Code § 17-6-4(b)............................................................................5

Ala. Code § 17-6-4(d)............................................................................5

Ala. Code § 17-7-1................................................................................2

Ala. Code § 17-8-1................................................................................2

Ala. Code § 17-8-12..............................................................................2

Ala. Code § 17-10-2..............................................................................4

Ala. Code § 17-11-14 ............................................................................7

Ala. Code § 17-16-1(b)..........................................................................3

Ala. Code § 45-37-110(c).......................................................................3

Ala. Code § 45-37-110(e).......................................................................3

**Other Authorities**

Fed. R. Civ. P. 19(a)(2) .........................................................................9

Fed. R. Civ. P. 65(d)(2) .........................................................................5

Fed. R. Civ. P. 65(d)(2)(C) ....................................................................3

*Organizational Chart*, JEFFERSON CNTY. ALA.: COUNTY DIRECTORY (Jan.
1, 2025) ..........................................................................................3, 4

PROB. CT. OF JEFFERSON CNTY. ALA.: ELECTIONS .................................................................4

The district court properly concluded that the *McClure* Plaintiffs-Appellees ("Plaintiffs") have standing to seek an injunction against the Jefferson County Commission ("Commission") and its agents to prohibit them from using the unconstitutional 2021 plan in future elections. Op. at 86, 139[1]. The injunction ensured complete or, at minimum, partial redress because Alabama county commissions "play a significant role in the electoral process." *Hale Cnty. v. United States*, 496 F. Supp. 1206, 1208 (D.D.C. 1980) (three-judge court). The Commission is not simply a legislature; rather the Commission has *both* "administrative and executive duties of police character, as well as legislative and judicial duties." *State v. Jefferson Cnty. Comm'n*, 139 So. 243, 245 (Ala. 1931); *see also Riley v. Kennedy*, 553 U.S. 406, 413 (2008) (noting that Alabama's commissions have many "executive and administrative functions"); *Garner v. Jefferson Cnty. ex rel. Whisler*, 175 So. 352, 353 (Ala. 1937) (same).

For decades, courts have granted injunctions against only commissions to block unlawful voting plans. *See, e.g.*, *Grayson v. Madison Cnty.*, No. 84-v-5770, 1988 U.S. Dist. LEXIS 19684, at *1 (N.D. Ala. June 2. 1988) (Vance, R., J.); *Dillard v. Baldwin Cnty. Comm'n*, 694 F. Supp. 836, 845 (M.D. Ala.), *aff'd* 862 F.2d 878 (11th Cir. 1988) (table). This Court also has jurisdiction because an injunction barring the Commission from exercising its administrative and executive role in elections plainly provides the Court

---

[1] Citations to the docket in this brief refer to Eleventh Circuit docket entries in *McClure v. Jefferson County Commission*, No. 25-13253, unless otherwise indicated in text. "Op." cites refer to the decision of the district court. ECF 191, No. 2:23-00443.

with "the power to 'redress' the 'injury' that the [Commission] allegedly 'caused' the plaintiff." *Utah v. Evans*, 536 U.S. 452, 459 (2002) (citation omitted). To show redressability, a plaintiff "need not demonstrate anything 'more than … a substantial likelihood' of redressability" of her injury as to the defendant. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126–27 (11th Cir. 2019) (internal quotations omitted). Even if the Commission can provide only partial relief, Plaintiffs would still satisfy the redressability requirement. *See Made in the USA Found. v. United States*, 242 F.3d 1300, 1310–11 (11th Cir. 2001) (finding redressability where injunctions against "subordinate executive officials" would cure some, but not all, of the injuries, despite the President's more central role in causing the plaintiff's alleged injuries). This is because a plaintiff has standing so long as an injunction against the defendant would "redress (at least in part) the plaintiff's injury." *I.L. v. Alabama*, 739 F.3d 1273, 1282 (11th Cir. 2014).

## I. The Commission and Its Agents, Employees, and Persons Acting in Concert with it, Use and Can Be Prevented from Using the 2021 Plan in Their Statutorily Prescribed Election Responsibilities.

In response to the first question in this Court's supplemental order, Doc. No. 72 at 3, the Commission and its agents (including the board of registrars and other election officials) "use" the 2021 plan when executing their administrative duties and directly control key aspects of county-wide elections. The Commission itself sets, assigns and maintains polling places, Ala. Code §§ 17-6-2, 17-6-4, compensates poll workers, Ala. Code § 17-8-12, plays a role in appointing poll workers for each precinct, Ala. Code § 17-8-1, purchases election equipment, Ala. Code § 17-7-1, installs and assigns electronic

2

voting machines to each precinct for every election, Ala. Code § 17-6-4(a), employs specialists to troubleshoot issues with electronic voting machines, Ala. Code § 17-16-1(b), and sets precinct boundaries, Ala. Code § 17-6-2. The injunction therefore prevents the Commission from "using" the 2021 Plan when performing any of these administrative functions in elections: it cannot identify polling places or assign voters, poll workers, or voting machines "using" the 2021 plan. *See* Op. at 139.

The Court's injunction also prevents the Commission's "agents" (including the board of registrars, poll workers, and voting machine specialists) from "using" the 2021 Plan to conduct their statutorily prescribed roles in elections. *Id.*; *see also* Fed. R. Civ. P. 65(d)(2)(C) (stating injunctions also bind persons "in active concert" with parties). An "agent" acts on behalf of and is subject to another person's control. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162 (11th Cir. 1993). "An employee is generally considered an agent of his or her employer." *Id.*, (holding that a mayor who was a "city employee" was the city's agent).

In Jefferson County, unlike elsewhere, the Commission exercises direct control over the board of registrars: it appoints and may remove its chair.[2] Ala. Code § 45-37-110(c). A chair may hire other board members as "deputies." Ala. Code § 45-37-110(e). The Commission also pays the board of registrars, Ala. Code § 17-3-10, and provides

---

[2] *See Organizational Chart*, JEFFERSON CNTY. ALA.: COUNTY DIRECTORY, (Jan. 1, 2025), https://www.jccal.org/704/County-Directory (identifying Barry Stephenson, the chair of board of registrars, as an agent of the Commission, and including the board of registrars as a subordinate "department" of the Commission).

them with office space, Ala. Code § 17-3-60. The chair was also the Commission's sole fact witness at trial and its 30(b)(6) witness. Op. at 6. Accordingly, in every meaningful sense, the chair, board of registrars, poll workers, and voting machine specialists are the paid "employees" of the Commission. The chair and his board register voters, maintain the registered voters list, and give that list the probate judge to be used in each election. Ala. Code § 17-4-2. The board also processes, canvasses, and certifies provisional ballots after each election. Ala. Code § 17-10-2. The injunction stops the board of registrars from taking these steps "using" the 2021 plan. And employees of the Commission control election administration within the Probate Judge's office.[3] Accordingly, the injunction against the Commission and its agents, regardless of its effect on the probate judge, circuit clerk or sheriff, will unquestionably redress Plaintiffs' injuries by preventing the use of the unconstitutional 2021 plan in the future.

As to this Court's second question, Doc. No. 72 at 3, the Commission plays a concurrent role with the probate judge, sheriff, and circuit clerk in "using" the 2021 plan to administer elections. As a practical matter, the Commission's administrative responsibilities over elections either overlap or exceed the delineated administrative duties of the probate judge, sheriff, and circuit clerk. The Commission is required to

---

[3] PROB. CT. OF JEFFERSON CNTY. ALA.: ELECTIONS , https://jeffcoprobatecourt.com/elections/ (last visited August 4, 2026) (Chief of Election, Assistant Chief of Election, and Accounting Assistant employees of County Commission); *See Organizational Chart, supra* note 3 (identifying "General Services" as department within the Commission).

"provide and maintain *at all times* a suitable map showing the current geographical boundaries with designation of precincts" and must send a copy of this map to the board of registrars and probate judge. Ala. Code § 17-6-2(c) (emphasis added). Additionally, before each election, the Commission is required to file at the county courthouse and provide the probate judge and the board of registrars with an alphabetical list of voters assigned to each polling place and each electronic voting machine. Ala. Code § 17-6-4(a). Other election officials are then required to use the information the Commission provides in elections. Ala. Code § 17-6-4(b),(d).[4] The Commission "uses" the 2021 plan to assign voters, election officials and voting machines to polling places. Ala. Code §§ 17-6-2, 17-6-4. County officials cannot perform their own election duties until the Commission takes these administrative steps using an operative districting plan. The Commission is the only entity authorized to establish and modify those boundaries. Ala. Code § 11-3-1.1.

As to the Court's third question, Doc. 72 at 3–4, the district court can order the implementation of a remedial plan without the probate judge, sheriff, or circuit clerk. An injunction binds those non-parties "who receive actual notice of it," including the parties as well as "other persons who are in active concert or participation with [them.]" Fed. R. Civ. P. 65(d)(2). Thus, the injunction not only binds the Commission and its agents but also those "in 'privity' with them." *FTC v. Leshin*, 618 F. 3d 1221, 1235 (11th

---

[4] Even if the probate judge were a party, the injunction would also prevent the probate judge from conducting any election under an unconstitutional plan.

Cir. 2010) (citation omitted). The probate judge, sheriff, and circuit clerk have been served with the District Court's judgment and can be served with any remedial order. These officials are in privity with the Commission insofar as the nonparties statutorily work in concert to administer elections, and none of these officials have sought to separately intervene. *See id.* at 1236 (affirming an order that bound a non-party who was "in active concert or participation with the defendants"). Indeed, the Jefferson County Attorney represents the Commission and has represented the probate judge and circuit clerk in other cases.[5] And there is no reason to believe that these officials would somehow insist on conducting elections under the enjoined 2021 plan or otherwise defy the order and expose themselves to contempt proceedings. *See, e.g., United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972) (upholding contempt conviction against non-party individual who violated a desegregation order against a school board).

In contrast, in *Scott v. Taylor*, this Court addressed a suit against state legislators. 405 F.3d 1251 (11th Cir. 2005). Judge Jordan's concurrence correctly explained that, unlike here, legislators in *Scott* "d[id] not have enforcement authority and are not involved in conducting elections in DeKalb County. Their role is limited to making law." *Id.* at 1259. Alabama law is clear that the Commission's role is far more expansive. Critically, the Commission employs and controls the board of registrars and poll

---

[5] *See, e.g., People First of Ala. v. Merrill*, 467 F. Supp. 3d 1179, 1191 (N.D. Ala. 2020) (listing the Jefferson County Attorney as counsel for the circuit clerk); *Jones v. Jefferson Cnty. Bd. of Educ.*, No. 19-CV-01821, 2019 WL 7500528 (N.D. Ala. Dec. 16, 2019) (listing the Jefferson County Attorney as counsel for the probate judge).

workers who help to administer elections. Similarly, the Commission sets and decides the compensation of the absentee election manager. Ala. Code § 17-11-14. Because the Commission controls these essential officials, this is unlike *Jacobson v. Florida Secretary of State*, where the alleged "injury" was "not traceable" to a state official because Florida's local supervisors are "not subject to [his] control." 974 F.3d 1236, 1253 (11th Cir. 2020).

## II. The Commission Cannot Be Ordered to Legislate, But it Can Be Ordered to Implement a Remedial Plan Without Adding Any Other Defendants.

As to the Court's fourth question, Doc. 72 at 4, the district court did not order the Commission to legislate. It is true that Alabama law gives the Commission an option to adopt a remedial plan. Ala. Code § 11-3-1.1(a). Indeed, as the district court found, Alabama law grants only the Commission the authority to alter the district boundaries. Doc. 40-1 at 368; Ala. Code §11-3-1.1(a). No other official has such authority. But the injunction *does not* require the Commission to exercise this option. No threat of contempt hung over its head for failing to legislate.[6] Rather, the injunction only requires the Commission to refrain from using the enjoined 2021 plan. Op. at 139.

Local governments must have an opportunity to draw remedial plans but, if they refuse to do so, courts have their "own duty to cure illegally gerrymandered districts through an orderly process." *North Carolina v. Covington*, 585 U.S. 969, 977 (2018). And

---

[6] While this injunction does not contemplate it, in certain circumstances, courts can hold local governments in contempt for failing to vote in a particular way. *See Spallone v. United States*, 493 U.S. 265, 280 (1990) (recognizing that a court may require local legislators to vote in a certain way to remedy unconstitutional discrimination).

importantly, once a new remedial plan exists, the district court *does* have the power to *require* the Commission to undertake its statutory responsibility to file that remedial plan with the probate judge. Ala. Code § 11-3-1.1(e) ("county commission shall file with the judge of probate … a map of the county showing the boundaries of the revised districts."). Therefore, because only the Commission is required by Alabama law to file the operative district boundaries with the probate judge, *only* the Commission can provide Plaintiffs with the redress sought. Doc. 40-1 at 368; Ala. Code § 11-3-1.1.

Courts can also modify injunctions if the circumstances require it. *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). The injunction contemplated further proceedings during a remedial process. Any subsequent remedial order could require the Commission to take the steps necessary, consistent with its statutory obligations, to provide the remedial plan to its agents like the board of registrar and other local officials in Jefferson County to use in elections. Op. at 139 ("Within 30 days, the parties shall please file a joint report on the development of a remedial redistricting plan."). Such an order could require the Commission to provide any remedial plan to the probate judge, which Alabama law requires the probate judge to then "use." Ala. Code § 11-3-1.1(e).

Thus, the district court could, in the remedial proceedings contemplated by its injunction, require the Commission to provide a new plan to the probate judge and other officials who share election administration responsibilities with the Commission.

III. **This Case Should Proceed Among the Existing Parties But, if the Court Believes Otherwise, the Federal Rules Require this Court to Remand to the District Court to Permit the Joinder of Any Necessary Defendant.**

Rule 19 addresses whether a party is "necessary" to the resolution of a case and supports the conclusion that the Commission is the only necessary party. "[F]indings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation." *In re Torcise*, 116 F.3d 860, 865 (11th Cir. 1997). Here, in addition to the arguments above, the "concern for conserving judicial resources" and reality that the "courts have invested significant resources in this matter," including years of discovery and a full trial, demonstrates that "equity and good conscience" do not require this Court to find the probate judge is an indispensable party. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1345 (11th Cir. 2011).

But even if this Court decides that the probate judge or another party is necessary, "dismissal for failure to join an indispensable party is appropriate only where the entity in question cannot be made a party." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (holding that plaintiffs had not joined parties necessary for complete injunctive relief and remanding for their joinder) (cleaned up). Here, because the probate judge and any other official can "readily" be made a party to this action, "the standard for dismissal under Rule 19(b) is unmet." *Id.*; *see also* Fed. R. Civ. P. 19(a)(2) ("If the [party to be joined if feasible] has not been…joined, the court shall order that the person be made a party."). "[P]ragmatic concerns, especially the effect on the parties and on the litigation," control Rule 19 determinations. *See Santiago v. Honewell Int'l, Inc.*, 768 Fed. Appx. 1000, 1007 (11th Cir. 2019).

Equitable considerations here also include the harm to Plaintiffs and other voters

of being forced to vote under an unconstitutional plan. *See Miller v. Johnson*, 515 U.S. 900, 911–12 (1995). The district court's finding that the 2021 plan is unconstitutional was based on significant direct and circumstantial evidence. For example, the District 2 Commissioner said that she "pulled in … a 99.2 percent black community," which the court found created an oddly shaped district line, a new precinct split that moved an 80.5% Black area into District 2 and deepened the municipal split of Bessemer, making the portions remaining in District 3 non-contiguous. Op. at 68, 78. That Commissioner further explained that she looked at "folks" in her district in "the[] face" to "know what [she was] getting," a reference to race. Op. at 79. The objective evidence the district court weighed included simulated plans showing that the 2021 plan's racial composition is more extreme than 98.49% of simulated plans that split fewer cities and had core retention scores between 89% and 97%. Op. at 57–58. The district court also found based on lay and expert testimony that the Commission split municipalities outside of Birmingham along racial lines like Center Point, Homewood, Trussville and Irondale where Black populations have moved since the 1990s to place Black voters into Districts 1 and 2. Op. at 35-37. Additionally, Plaintiffs' maps better respected traditional criteria like compactness, contiguity, and precinct and municipal splits, and they "would not result in a change to the partisan composition of the 2021 plan." Op. at 84–85.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should either affirm the District Court's injunction or, alternatively, remand this case for the joinder of any necessary parties.

Dated: August 4, 2026

Respectfully submitted,

/s/ *Kathryn C. Sadasivan*
Kathryn Sadasivan
Brenda Wright
Laruen Carbajal
NAACP Legal Defense and
Educational Fund, Inc
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
ksadasivan@naacpldf.org
bwright@naacpldf.org
lcarbajal@naacpldf.org

Deuel Ross
Kacey Mordecai
NAACP Legal Defense and
Educational Fund, Inc
700 14th Street N.W., Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
dross@naacpldf.org
kmordecai@naacpldf.org

Ruth Greenwood
Election Law Clinic
Harvard Law School
6 Everett Street, Suite 4105
Cambridge, MA 02138
Tel: (917) 403-4976
rgreenwood@law.harvard.edu

Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
Fax: (205) 254-1500
nlawsen@wigginchilds.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with this Court's order, ECF No. 72, because it does not exceed 10 pages. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced 14-point Garamond face using Microsoft® Word.

*/s/ Kathryn Sadasivan*
Kathryn Sadasivan

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2026, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system thereby serving all counsel of record.

*/s/ Kathryn Sadasivan*
Kathryn Sadasivan